# EXHIBIT 3



Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451
www.uspto.gov

SEP 27 2012

Ms. Barbara C. Hammerle
Acting Director
Office of Foreign Assets Control
Department of the Treasury
Washington, DC 20220

Re:   Information Requested for OFAC's Meeting with Cubaexport
      U.S. Trademark Registration No. 1031651
      Mark: HAVANA CLUB and design

Dear Ms. Hammerle:

Thank you for your letter dated August 31, 2012, requesting information from the USPTO regarding the actions discussed in Cubaexport's June 11, 2012 letter to me.

Attached is a memorandum providing information regarding provisions of the Trademark Act, the Trademark Rules of Practice, and the Trademark Manual of Examining Procedure (TMEP) applicable to the USPTO actions at issue, as well as specific information about the USPTO actions and procedures regarding Cubaexport's trademark registration.

Please contact me if you have any questions or would like any additional information.

Sincerely,

Deborah S. Cohn
Commissioner for Trademarks

Encl:   Memorandum

cc:     David H. Bernstein, Esq.
        Debevoise & Plimpton LLP
        (Counsel to Cubaexport)

MEMORANDUM

To: Office of Foreign Assets Control, U.S. Department of the Treasury

From: United States Patent and Trademark Office

Date: September 27, 2012

Re: Information Regarding U.S. Trademark Registration Maintenance and Renewal Requirements and USPTO Record Keeping Procedures

---

I. EXPLANATION OF TRADEMARK REGISTRATION MAINTENANCE AND RENEWAL REQUIREMENTS

A. REGISTRATION AND RENEWAL TERMS

Prior to November 16, 1989, federal trademark registrations were issued or renewed for a twenty-year term. All registrations are now issued or renewed for a ten-year term pursuant to the Trademark Law Revision Act of 1988, Pub. L. No. 100-667, 102 Stat. 3935. *See* 15 U.S.C. § 1058(a) ("Each registration shall remain in force for 10 years . . . .") and 15 U.S.C. § 1059(a) ("[E]ach registration may be renewed for periods of 10 years at the end of each successive 10-year period following the date of registration . . . .").

B. REGISTRATION MAINTENANCE REQUIREMENTS

In order to maintain a federal registration, owners are required to file an acceptable affidavit or declaration of use or excusable nonuse, "accompanied by the fee prescribed by the Director" during the statutorily prescribed periods pursuant to section 8 of the Trademark Act, 15 U.S.C. § 1058 ("§8").[1] An acceptable §8 affidavit must be filed between the fifth and sixth year after registration or during the six-month grace period immediately following ("6-Year §8 Affidavit"). 15 U.S.C. § 1058(a)(1); 37 C.F.R. § 2.160. The owner of the registration also must file an acceptable affidavit of use or excusable nonuse between the ninth and tenth year after registration and each successive ten-year period following registration, or during the six-month grace period immediately following ("10-Year §8 Affidavit"). 15 U.S.C. § 1058(a)(3); 37 C.F.R. § 2.160.

Both the 6-Year and 10-Year §8 Affidavits have the same legal requirements. The owner of the registration must pay the prescribed fee for each class of goods and services and (i) if use of the mark in commerce is being claimed, file an affidavit stating that the mark is in use in commerce,

---

[1] The holder of a registered extension of protection of an international registration to the United States must periodically file affidavits of use or excusable nonuse pursuant to § 71 of the Trademark Act, 15 U.S.C. § 1141(k).

1

set forth the goods and services with which the mark is in use in commerce, and include a specimen showing current use of the mark in commerce, or (ii) if excusable nonuse is being claimed, file an affidavit setting forth the goods and services with which the mark is not in use in commerce, and include a showing that any nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark. 15 U.S.C. § 1058(b); 37 C.F.R. § 2.161; TMEP § 1604.05. The current fee for filing a §8 affidavit is $100 per class with an additional charge of $100 per class if filed during the grace period. 37 C.F.R. § 2.6.

If the 6-Year or 10-Year §8 Affidavit is not filed within the time periods set by statute, or if the §8 Affidavit is timely filed but unacceptable because it does not meet the statutory requirements, the registration is "canceled." 15 U.S.C. § 1058(a) ("[T]he registration of any mark shall be canceled by the Director for failure to comply with the provisions of subsection (b) of this section, upon expiration of the following time periods, as applicable . . . ."); 37 C.F.R. § 2.160.

### C. RENEWAL REQUIREMENTS

Pursuant to section 9 of the Trademark Act, 15 U.S.C. § 1059 ("§9"), registrations may be renewed at the end of each successive ten-year period following the date of registration.[2] Renewal requires "payment of the prescribed fee" for each class of goods and services and the timely "filing of a verified application" signed by the registrant or the registrant's representative. 15 U.S.C. § 1059; 37 C.F.R. § 2.183. Renewal applications must be filed within the one-year period before the end of each successive ten-year period for which the registration was issued or renewed, or within the six-month grace period immediately following. 15 U.S.C. § 1059; 37 C.F.R. § 2.182. The current fee for renewing a registration is $400 per class with an additional charge of $100 per class if filed during the grace period.

If the renewal application is not filed within the time periods set by statute, or if it is timely filed but unacceptable because it does not meet the statutory requirements, see 15 U.S.C. § 1059(a), the registration "expires" as of the end of its term. 37 C.F.R. §§ 2.182-2.186.

### D. COMBINED 10 YEAR SECTION 8 AND SECTION 9 RENEWAL FILINGS

Because the deadline for filing a §9 renewal application coincides with the deadline for filing the 10-Year §8 affidavit—both are due at the end of each successive ten-year period following the date of registration—registrants generally file a combined §8 declaration of use and/or excusable nonuse and a §9 application for renewal ("combined §8/9 filing"). The statutory requirements of maintenance and renewal, however, are distinct, as are the consequences of an untimely or unacceptable filing. As noted above, if the requirements of §8 are not met, the Director is required by that provision to cancel the registration as of the end of its term. If the requirements of §9 are not met, the registration expires as of the end of its term.

---

[2] Section 9 does not apply to Extensions of Protection of International Registrations to the United States. Renewals of international registrations must be made at the International Bureau of the World Intellectual Property Organization, in accordance with Article 7 of the Madrid Protocol. 37 C.F.R. § 7.41(a).

2

## II. USPTO RECORD KEEPING AND ACTIONS REGARDING MAINTENANCE AND RENEWAL OF TRADEMARK REGISTRATIONS

The Trademark Act requires the Director of the United States Patent and Trademark Office ("USPTO") to maintain a public record of all registered trademarks. 15 U.S.C. § 1057(a) ("[A] record [of issued registrations] shall be kept in the United States Patent and Trademark Office"). Previously kept in paper files, the USPTO's registration records are now electronic and available for searching on the USPTO's website. When the status of a registration changes, the USPTO updates its electronic records to indicate the status change.

If no §9 renewal application is filed before the end of the grace period, the registration expires and the USPTO records are updated to indicate that the registration is expired. *See* 37 C.F.R. § 2.182; TMEP § 1611. Likewise, if no §8 affidavit is filed before the end of the grace period, the registration is canceled, and the USPTO records are updated to indicate that the registration is canceled. *See* 37 C.F.R. § 2.160; TMEP § 1611.

When the USPTO updates the registration records to accurately reflect their legal status, the USPTO performs a ministerial record-keeping function. A registration that has been renewed and maintained remains designated as "live" in the USPTO's records, while a registration that has expired under §9 and/or been canceled under §8 is designated as "dead." Specifically, when a registration cancels/expires for failure to meet both the 10-year statutory maintenance and renewal requirements, the status field in the registration record is updated to show CANCELLED, the prosecution history is updated to show CANCELLED SEC. 8 (10-YR)/EXPIRED SECTION 9, and the "Live/Dead Indicator" field is updated to indicate that the registration is "DEAD." The "Cancellation Date" field shown in the USPTO's records indicates the date the records were updated, but the registration's actual cancellation/expiration date is the end of the registration term as set by statute. The USPTO's updating of its registration records in this way does not alter the registration's legal status. The legal status of the registration changes because the term of the registration or renewal ends without the owner meeting the requirements of §8 and/or §9.[3]

If a §8 affidavit and/or §9 renewal is filed, the prosecution history of the registration in the electronic records of the USPTO is updated to show the filing of the document(s). By statute, the USPTO Director must notify the registration owner if the §8 affidavit and/or §9 renewal are refused and the reasons for refusal. 15 U.S.C. § 1058(e) and § 1059(b); 37 C.F.R. §§ 2.163 and 2.184. In the case of a combined §8/9 filing, the USPTO issues a single Office action stating the reason(s) for refusal. If the deficiency identified in the Office action is not corrected or the registrant fails to respond to the Office action, and no time remains in the grace period in which to file a new document, the registration simultaneously will be both canceled for failure to

---

[3] Similarly, the USPTO updates registration records to reflect changes to their status when ordered to do so by a court pursuant to 15 U.S.C. § 1119, which instructs that the Director "shall make appropriate entry upon the records of the Patent and Trademark Office." When the USPTO updates its records pursuant to a § 1119 order, the date indicated in the records is not the date of the court order, but rather the date the records were updated by the USPTO.

3

comply with the requirements of §8 and it will expire under §9. The owner of the registration may file a petition to the Director for review of the action under 37 C.F.R. §§ 2.146(a)(2) and 2.165(b). The decision on a petition under 37 C.F.R. § 2.146 is the final action of the USPTO.

The Director has no discretion to waive the requirements of §§8 and 9.[4] Thus, if a §8 affidavit, §9 renewal, or combined §8/9 filing is not accompanied by the prescribed fees, the Director has no discretion but to issue a refusal stating that the registration will be canceled and/or has expired.

### III. THE "HAVANA CLUB" REGISTRATION (Reg. No. 1031651)

Pursuant to OFAC's regulations in effect at the time, which permitted registration, maintenance, and renewal fees to be paid pursuant to the general license provision of the Cuban Assets Control Regulations (CACR), the original registration for HAVANA CLUB was issued on January 27, 1976 and remained in force until 1996 for an initial term of twenty years. A 6-Year §8 Affidavit of excusable nonuse was filed and the required fees paid on January 13, 1982, and subsequently accepted on April 12, 1982. The first renewal application was filed and required fees paid on January 18, 1996 and granted on June 18, 1996, for a period of ten years, i.e., until January 27, 2006.

At the time the second renewal application was filed on December 14, 2005 as a combined §8/9 filing, OFAC's regulations had changed as a result of the 1998 enactment of Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 211(a)(1), 112 Stat. 2681, which eliminated the ability of Cuban companies to rely on the general license provisions to register or renew certain trademarks, including the HAVANA CLUB registration. The combined filing included authorization to charge the required fees to the USPTO deposit account of Ropes and Gray LLP, attorney for Cubaexport at the time of the combined §8/9 filing. Ropes and Gray indicated in the cover letter accompanying the combined filing that authorization to pay the fee was given pursuant to OFAC License No. CU-74488, issued on March 4, 2005.

---

[4] *See Checkers Drive-In Restaurants, Inc. v. Comm'r of Patents and Trademarks.*, 51 F.3d 1078, 1085, 34 USPQ2d 1574, 1581 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 866 (1995) ("[I]n establishing cancellation as the penalty for failure to file the required affidavit [under 15 U.S.C. §1058], Congress made no exception for the innocent or the negligent. Thus, the Commissioner had no discretion to do other than cancel Checkers's service mark registration in this case"); *In re Mother Tucker's Food Experience (Canada) Inc.*, 925 F.2d 1402, 1405, 17 USPQ2d 1795, 1798 (Fed. Cir. 1991) ("The history of Section 8 supports the view that compliance with the statutory requirements is mandatory" and "[i]t was not within the Commissioner's discretionary authority to waive [the] requirement" to show use in commerce.); *In re Culligan Int'l Co.*, 915 F.2d 680, 16 USPQ2d 1234 (Fed. Cir. 1990) (affirming that an applicant's failure to pay the late renewal fee under Section 9 during the three month period allowed in the statute for late renewal applications "on payment of the additional fee", 15 U.S.C. § 1059(a), could not be waived by the Commissioner since it was an express requirement of the statute); *In re Holland American Wafer Co.*, 737 F.2d 1015, 1018, 222 USPQ 273, 275 (Fed. Cir. 1984) ("Timeliness set by statute is not a minor technical defect which can be waived by the Commissioner.").

4

Although Cubaexport's attorney had authorized payment of the fee from the law firm's deposit account, the USPTO was informed by OFAC in a letter dated April 6, 2006 that payment of the fee was not authorized under License No. CU-74488. Because payment of the fee is required by statute and cannot be waived, the USPTO issued an Office action on July 21, 2006, notifying Cubaexport that the combined filing was refused because the fee had not been paid:

> "The combined filing included authorization to charge the fee to the deposit account of Ropes and Gray LLP, attorney for registrant. As indicated in the cover letter accompanying the combined filing, this authorization was given pursuant to License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005. However, in a letter dated April 6, 2006 from the Department of the Treasury, the USPTO was informed that License No. CU-74488 does not authorize Ropes & Gray LLP to pay the renewal fee. Therefore, the required fee for the combined filing has not been paid.
>
> It is noted that in a letter dated April 7, 2006, Ropes & Gray LLP filed an application for another specific license for authorization of payment of the fees required for renewal of the subject registration. Registrant is required to notify the USPTO whether that specific license has been granted or denied."

The Office action provided Cubaexport six months to submit the required fees. 37 C.F.R. §§ 2.161(d)(1), 2.183(b). On August 2, 2006, Cubaexport's attorney submitted a response to the Office action notifying the USPTO that OFAC declined to grant Cubaexport a specific license to pay the required fee and requested that the registration be renewed nonetheless. In an Office action dated August 3, 2006, refusal of the combined filing was continued because the required fees were not paid:

> "The Sections 8 & 9 Combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.
>
> The Office has received your letter of August 1, 2006, indicating that the specific license necessary to authorize the required fee for filing the combined document has been denied. Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee for filing the Sections 8 & 9 Combined filing has not been submitted; accordingly, the registration will be cancelled/expired.
>
> It is noted that your letter contains arguments in support of renewing the subject registration. You may file a petition to the Director requesting review of this decision. The petition must be filed within six months from the mailing date of this letter and must be accompanied by a fee of $100. 37 C.F.R. §§2.6, 2.146(a)(2) and 2.176."

Cubaexport filed a petition to the Director on October 5, 2006 seeking review of the refusal to renew the registration. Action on the petition was suspended on December 6, 2006 pending disposition of the federal court litigation that Cubaexport filed against Treasury/OFAC regarding OFAC's decision to refuse to grant the specific license for the renewal fee payment. The petition

5

suspension order provided Cubaexport 30 days from the date of the final disposition of the litigation against OFAC to notify the USPTO.

In a decision issued on March 29, 2011, the U.S. Court of Appeals for the District of Columbia Circuit affirmed the district court's ruling upholding OFAC's decision to deny Cubaexport's request for a specific license to pay the prescribed fee. *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 638 F.3d 794 (D.C. Cir. 2011). The appeals court decision held that: the 1998 law prohibited Cubaexport from renewing the registration when it sought to do so in 2006; OFAC is required to follow the 1998 law; authorization in the form of a specific license from OFAC to pay the prescribed fee was a necessary prerequisite to renewal of the registration; and OFAC's decision to deny such license was appropriate. The court's decision thus confirms that the fees required to maintain and renew the registration are not authorized to be paid. On May 14, 2012, the U.S. Supreme Court denied Cubaexport's petition for certiorari, and the appeals court decision became final.

Cubaexport filed a submission with the USPTO on June 11, 2012 notifying the USPTO of the final disposition of the litigation against OFAC and raising new arguments that the petition should be granted (or in the alternative, that the registration should remain frozen in its previously existing state for the duration of the Cuban embargo) because the USPTO's actions of refusing the combined maintenance and renewal filing for failure to pay the prescribed fees and of updating the USPTO's records to reflect the expired and canceled status of the registration would be prohibited under the CACR unless licensed by OFAC. Cubaexport thereafter contacted OFAC to request a meeting to discuss the issues raised in the June 11th letter to the USPTO. The USPTO will not act to decide the petition until OFAC has the opportunity to consider whether the USPTO actions at issue require a license.