**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| BACARDI & COMPANY LIMITED AND BACARDI U.S.A. INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES PATENT AND TRADEMARK OFFICE, et. al., <br><br> *Defendants.* | Civil Action No. 1:21-cv-1441 <br> Hon. Liam O'Grady |

## ORDER

### Introduction

This matter comes before the Court on the Defendants' Motion to Dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. Dkt. 17. This matter has been fully briefed by the Parties.

### Background

The Plaintiffs in this case are Bacardi & Company Limited and Bacardi U.S.A., Inc. Bacardi & Company Limited is a Swiss company with its headquarters in Meyrin, Switzerland. Dkt. 1 at 5. Bacardi Limited is the owner of the pending trademark application 74/5772,667 for the HAVANA CLUB trademark. *Id.* Bacardi USA is a United States company with its principal place of business in Coral Gables, Florida. *Id.* Collectively the Plaintiffs will be referred to as

1

Bacardi. Bacardi is a distiller who distributes and sells rum within the United States and internationally. *Id.*

The Plaintiffs have brought this civil action to dispute the renewal of the registration of the trademark "HAVANA CLUB." Dkt. 1 at 1. Currently, the HAVANA CLUB trademark is registered to the company Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"). *Id.* The HAVANA CLUB trademark was registered by Cubaexport in 1974 after the original registration of the trademark was not renewed. *Id.* at 12. The Plaintiffs have brought the current suit against the United States Patent and Trademark Office, a federal agency, and Drew Hirshfeld, in his official capacity as the acting director of the United States Patent and Trademark Office. *Id.* at 6.

At the heart of this dispute is the ownership of the HAVANA CLUB trademark.[1]  As alleged in the Complaint, the HAVANA CLUB trademark was originally used by a Cuban family business owned by Jose Arechabala Aldama. Dkt. 1 at 11. Between 1934 and 1959, the HAVANA CLUB trademark was used on the sales of rum in the United States. *Id.* The sales of this trademarked rum continued until January 1, 1960 when the Cuban Government took possession of the assets of the rum distiller.[2] *Id.* In 1963, the United States instituted a trade embargo on Cuba. *Id.* at 8. Sanctions continued to be imposed on the Cuban government when in 1998, the United States Congress passed Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act ("Section 211"). *Id.* at 9. Section 211 prevented the registration of trademarks that were seized by the Cuban Government. *Id.*

---

[1] There is currently ongoing litigation in the United States District Court for the District of Columbia between Bacardi and Cubaexport where Bacardi is seeking the cancellation of Cubaexport's registration of the HAVANA CLUB mark. *Bacardi & Company Limited, et. al. v. Empresa Exportadora de Alimentos y Productors Varios, et. al.*, Civil case no 1:04-cv-00519-EGS (D.D.C.)

[2] The Complaint alleges that Bacardi acquired the rights to the HAVANA CLUB trademark in 1997 from the successor of the original distiller. Dkt. 1 at 12.

Bacardi has now attempted to register the HAVANA CLUB trademark with United States Patent and Trademark Office (the "USPTO"). Dkt. 1 at 12. Bacardi's registration of that trademark was subsequently suspended pending the resolution of the 2004 litigation between Bacardi and Cubaexport. *Id.* at 12-13. In 2006, Bacardi alleges that the USPTO did not accept the renewal fees for the registration of the trademark due to the fact Cubaexport lacked a specific license required by the Department of Treasury's Office of Foreign Asset Control ("OFAC") under the provisions of Section 211. *Id.* at 14. Over the next six years, Cubaexport brought an unsuccessful civil suit against the OFAC challenging this determination of the licensure status. *See Empresa Cubana Exportadora De Alimentos Y Productos Varios v. Dep't of Treasury*, 606 F. Supp. 2d 59 (D.D.C. 2009), *aff'd* 638 F.3d 794 (D.C. Cir. 2011), *cert. denied* 132 S. Ct. 2377 (May 14, 2012).

In 2016, the OFAC changed course and granted a specific license which allowed Cubaexport to renew their registration of the HAVANA CLUB trademark. Dkt. 1 at 17. Cubaexport subsequently renewed the registration of the HAVANA CLUB trademark on January 13, 2016. *Id.* at 18. Currently, the trademark remains registered to Cubaexport. Bacardi believes that due to this registration, Bacardi's pending application for the same trademark will remain suspended or eventually be denied. *Id.* Bacardi has now brought the instant suit against the USPTO and its director under the American Procedures Act ("APA"; 5 USC § 706(2)) or, in the alternative, as a claim that the renewal of the HAVANA CLUB registration was an *ultra vires* act by the USPTO director. *Id.* at 18-21. The Defendants have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6).

**Legal Standard**

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction for lack of proper subject matter. For a plaintiff to bring suit in federal court, their complaint must allege facts that clearly demonstrate that jurisdiction is proper. *United States v. Hays*, 515 U.S. 737, 743 (1995). If a defendant asserts that the complaint fails to allege facts upon which subject matter jurisdiction can be based, a district court will assume the facts plead in the complaint are true when evaluating a motion to dismiss. *Medtronic, Inc. v. Lee*, 151 F. Supp. 3d 665, 671 (E.D. Va. 2016).

**Discussion**

The Court has an "independent obligation" to examine the constitutional standing of a Plaintiff to bring suit in federal court. *Hays*, 515 U.S. at 742 (citations omitted). To demonstrate the minimum requirements for Article III standing the Plaintiff must demonstrate three factors: 1) must have suffered an injury fact that is concrete and particularized instead of hypothetical; 2) there must be a causal connection between the injury in fact and an act of the Defendant; and 3) the injury must be likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). For the first factor, the Complaint alleges that the Plaintiffs have suffered an injury from the high likelihood that their trademark will not be renewed. Dkt. 1 at 18. For the second factor, the Plaintiffs allege that this injury is connected to the actions of the Defendant. *Id.* at 17. As to the third factor, the Plaintiffs' Prayer for Relief asks for a remedy through cancellation of Cubaexport's registration of the HAVANA CLUB mark. Dkt. 1 at 22. The requirements of the third component of constitutional standing are important to the Court's analysis in the current matter because the Complaint demonstrates that

the Court can offer to redress the alleged injury would be the cancellation of Cubaexport's trademark. Therefore, the Court finds that the current civil action is a cancellation proceeding as defined under 15 USC § 1064. To find otherwise would indicate that the supposed injury to Bacardi would not be redressable and Bacardi would not have the required constitutional standing to establish proper subject matter jurisdiction.

Bacardi argues that subject matter jurisdiction is proper because the structure of the Lanham Act does not offer judicial review of the specific act they complain of, the purported improper renewal of the HAVANA CLUB mark. Dkt. 20 at 14. The APA allows for a person who suffers a legal wrong from the action of a government agency to seek judicial review of that agency action. 5 USC § 702. However, the APA does not apply when a statute precludes judicial review. 5 USC § 701. There is a presumption in favor of finding this judicial review available, but that presumption can be rebutted. *Block v. Community Nutrition Institute*, 467 U.S. 340, 349 (1984). The presumption can be rebutted from statutory language, congressional intent or, "…by inferences of intent drawn from the statutory scheme as a whole." *Id.* (citing *Morris v. Gressette*, 432 U.S. 491 (1977); *Switchmen v. National Mediation Board*, 320 U.S. 297 (1943)). Therefore, the Court will look at the language and the statutory scheme of the Lanham Act, which governs the registration of trademarks, to inform the decision of whether judicial review is proper in the current case.

A person who is harmed by the registration of a trademark may file a petition to cancel that trademark. 15 USC § 1064. When there has been a petition for cancellation filed with the USPTO, the USPTO will notice all interested parties and refer the matter to the Trademark Trial and Appeal Board. 15 USC § 1067. A person who is dissatisfied with the decision of the board may commence a civil action in a United States District Court. 15 USC § 1071(b)(1). When there

is an adverse party in such a matter, the civil action will be instituted against the adverse party. 15 USC §1071(b)(4). In that adversarial proceeding, the Director "shall not be made a party." 15 USC § 1071(b)(2). When a civil action before a district court involves a trademark, that district court has been expressly given the power to cancel the registration of that trademark. 15 USC § 1119. The statutory scheme governing the challenge to a trademark's registration is comprehensive. As discussed below, the Courts finds that there has been preclusion of judicial review of the agency decisions to renew a trademark registration from both the statutory language and the statutory structure of the Lanham Act.

A cancellation proceeding is an "inter partes proceeding" referenced within the Lanham Act. *Pro-Football, Inc. v. Blackhorse*, 62 F. Supp. 3d 498, 506 (E.D. Va. 2014) (*ref, Rosenruis-Gestao E Servicos LDA v. Virgin Enters.*, 511 F.3d 437, 443 n.4 (4th Cir. 2008); The United States Trademark Law Rules of Practice & Federal Statutes § 2.145). The language of the Lanham Act expressly precludes a civil action (as it is an inter partes proceeding) from being filed against the Director of the USPTO. 15 USC § 1071(b)(2). Because the named Defendant in this case cannot be sued based on the plain language of the Lanham Act, the Court does not have subject matter jurisdiction over this civil action.

Furthermore, the Lanham Act expressly intends for an adversarial process to resolve the dispute of a trademark's registration. As discussed above, there is a detailed procedure within the Lanham Act that requires all parties with an interest in a trademark to be noticed by the USPTO upon a petition for cancellation. The structure and language of the Lanham Act demonstrates it is "fairly discernible" that Congress intended for competing claims over the registration of a trademark to be resolved through an adversarial process. *Block*, 467 U.S. at 351 (A statute that allowed judicial review of agency decisions on milk regulations by cow handlers and dairy

producers impliedly did not allow for challenges by dairy consumers because consumers were not included in the statutory provisions to challenge agency decisions). The Court finds that there is preclusion of judicial review through civil actions against the USPTO. Congress did not allow for challenges to another party's registration by filing civil suit against the USPTO. At the same time Congress did provide an alternative method to resolve the exact type of dispute in this current matter. Accordingly, the structure of the Lanham Act implies that the instant civil action is precluded as a means of judicial review.

Bacardi has argued that judicial review is proper in this case because there is no alternative adequate remedy available to Bacardi. Dkt. 20 at 20. The APA allows for review of "agency action for which there is no other adequate remedy in a court." 5 USC § 704. Bacardi has argued that the remedies outlined in the Lanham Act are inadequate because a registration cannot be challenged for improper renewal. Dkt. 20 at 21. A renewal does not occur until more than five years after the initial registration, and the Lanham Act only allows for petitions for cancellation of marks that are more than five years old on a limited number of grounds. 15 USC §§ 1064 (1), 1064 (3). Accordingly, Bacardi believes that they are foreclosed from an adequate remedy for what they have alleged is an improper renewal of the HAVANA CLUB trademark. However, this does not change the finding of that judicial review has been precluded. § 704 of the APA creates judicial review based on the availability of a remedy, not the availability of a claim. As discussed above, the Lanham act has created a procedure to challenge the registration of the HAVANA CLUB trademark and offer the remedy that Bacardi seeks. Therefore § 704 does not apply to the current civil action based on the claim Bacardi seeks to assert.

Bacardi has also argued that the Court should find that there is proper subject matter jurisdiction because the USPTO director exceeded his statutory authority. To show that a district

court has jurisdiction on account of an *ultra vires* action by a federal agency, the plaintiff must show that a "clear, specific and mandatory statutory provision has been violated" and also show that there would be a complete deprivation of an alternative remedy. *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth.*, 844 F.3d 414, 421 (4th Cir. 2016). Bacardi has not shown they are deprived of an alternative remedy. To reiterate, there is a comprehensive scheme to challenge the ownership and registration of a trademark that Bacardi has already utilized by filing suit in the District of Columbia. *See Bacardi & Company Limited*, 1:04-cv-00519 (D.D.C.).

**Conclusion**

This is a property dispute. Congress has explicitly laid out the framework to resolve disputes over the type of property in question. The Court does not have subject matter jurisdiction over this civil action because the statutory framework does not allow for the resolution of this type of dispute between a party and a government agency, but rather mandates that the dispute be resolved between the two adversarial parties. Accordingly, the Motion to Dismiss for Lack of Subject Matter is **GRANTED**. Dkt. 17. The Complaint is hereby **DISMISSED**.

It is so **ORDERED**.

April 6, 2022
Alexandria, Virginia

Liam O'Grady
United States District Judge