IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BACARDI & COMPANY LIMITED and BACARDI USA, INC., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES PATENT & TRADEMARK )<br>OFFICE and COKE MORGAN STEWART,[1] )<br>in her official capacity as the Acting Director )<br>of the United States Patent & Trademark )<br>Office, )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>EMPRESA CUBANA EXPORTADORA DE )<br>ALIMENTOS Y PRODUCTOS VARIOS. )<br>)<br>Intervenor-Defendant. ) | 1:21-cv-1441 (LMB/IDD) |

MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment in a civil action brought under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq.,[2] by Bacardi & Company Limited and Bacardi USA, Inc. ("plaintiffs" or "Bacardi") against the U.S. Patent and Trademark Office and the Director of the USPTO ("defendants") to set aside the Director's

---

[1] Ms. Stewart was named Deputy Director of the U.S. Patent and Trademark Office ("USPTO") on January 20, 2025, and by statute, is currently serving as the Acting Director of the USPTO.

[2] This civil action was initially assigned to U.S. District Judge Liam O'Grady, who dismissed it for lack of subject matter jurisdiction. The Fourth Circuit Court of Appeals reversed that opinion and remanded. Upon the retirement of Judge O'Grady, this civil action was reassigned to this Court.

decision accepting renewal of Empresa Cubana Exportadora de Alimentos y Productos Varios' ("intervenor-defendant" or "Cubaexport") "HAVANA CLUB" and design trademark, as pictured below.



[Dkt. No. 48-1] at 1.

The motions have been fully briefed and oral argument has been held. At the hearing, the Court orally granted defendants' and intervenor-defendant's Motions for Summary Judgment and denied plaintiff's Motion for Summary Judgment. This Memorandum Opinion supplements the oral decision and begins the time in which an appeal may be filed.

The following facts are not contested. Cubaexport is a Cuban corporate entity established by the Cuban government in 1965. Beginning in the 1970s, Cubaexport exported rum from Cuba to countries other than the United States under the "HAVANA CLUB" and design trademark at issue. It could not export rum to the United States because of the Cuban embargo. See Cuban Assets Control Regulations ("CACR"), 31 C.F.R. Part 515. In 1976, Cubaexport obtained a registration from the USPTO for its "HAVANA CLUB" trademark for Cuban rum.[3]

---

[3] The Cuban embargo blocks most U.S. transactions with Cuban entities like Cubaexport, but the trademark registration and payment of the registration fee were allowed under a "general license" included in the embargo regulations, which authorized Cuban companies to register their trademarks in the United States. See 31 C.F.R. § 515.527(a)(1). A "general license" is a general authorization included in the embargo regulations, see 31 C.F.R. § 515.317, and a "specific license" is an authorization issued separately by the Office of Foreign Assets Control ("OFAC"), see id. § 515.318.

For nearly two decades, Cubaexport's registration went unchallenged until, in 1993, the international beverage distributor Pernod Ricard S.A. entered into an agreement to distribute Havana Club rum around the world. Bacardi, a competitor of Pernod Ricard S.A., attempted to register its own "Havana Club" trademark but the USPTO issued an Office Action advising that the registration would be denied on multiple grounds, one of which was that Bacardi's application conflicted with Cubaexport's existing registration.

On July 12, 1995, Bacardi filed a petition seeking cancellation of Cubaexport's "HAVANA CLUB" trademark registration before the Trademark Trial and Appeal Board ("TTAB"). In 2004, after receiving an adverse decision from the TTAB, Bacardi filed a civil action in the U.S. District Court for the District of Columbia. Bacardi & Co. v. Empresa Cubana Exportadora de Alimentos y Productos Varios, No. 1:04-cv-00519-EGS. That civil action is currently pending with fact discovery due to end in March 2025. Because Bacardi's APA claim regarding the validity of Cubaexport's 2006 renewal was not properly before the court in that action, Bacardi brought the instant APA action in this district. See Bacardi & Co. v. U.S. Pat. & Tmk. Off., 104 F.4th 527, 535 (4th Cir. 2024).

In 1998, Congress passed a statute, referred to as "Section 211," as part of an appropriations bill that modified the general license provision in the embargo regulations to exclude the registration of trademarks that are "the same as or substantially similar to a mark . . . that was used in connection with a business or assets that were confiscated." See Omnibus, Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 211, 112 Stat. 2681, 2681–88 (1998); 31 C.F.R. § 515.527(a)(2). U.S. courts have held that Section 211 applies to Cubaexport's "HAVANA CLUB" trademark because the same name was used long ago by a Cuban company that was nationalized in 1960 as part of Cuba's transition to

3

a socialist economy.  E.g., Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury, 638 F.3d 794, 803 (D.C. Cir. 2011).  As so construed, Section 211 required Cubaexport to obtain a specific license from OFAC to pay fees to the USPTO to renew its trademark registration.

Cubaexport's initial trademark registration was effective for 20 years.  To continue its registration, Cubaexport had to submit a renewal application by January 27, 2006,[4] along with a declaration that it was using the mark or that its non-use was excusable.  15 U.S.C. §§ 1058-59.  Both the application and declaration, which are known as a Section 8/9 combined filing, required the payment of fees.[5]  On or about December 14, 2005, Cubaexport, through its then-attorneys at Ropes & Gray, LLP, submitted its Section 8/9 combined filing, which included an authorization for the USPTO to charge all fees to Ropes & Gray's USPTO deposit account; however, because Congress had adopted Section 211 in 1998, it was no longer clear that Cubaexport could rely on the general license in 31 C.F.R. § 515.527 to pay the required filing fee.  Accordingly, the application cited an existing specific license, which OFAC had issued to Ropes & Gray authorizing it to represent Cubaexport, as an authorization for payment of the fee.  On December 21, 2005, the USPTO withdrew the renewal fee from Ropes & Gray's account, but on April 6, 2006, OFAC informed Cubaexport and the USPTO that the Ropes & Gray license did not authorize the payment.  OFAC invited Cubaexport to apply for a specific license, which Cubaexport did the next day.

---

[4] The Trademark Law Revision Act of 1988 changed the standard renewal period for trademarks from 20 years to 10 years.  Trademark registrations that were issued or renewed prior to November 16, 1989, were effective for 20 years and renewable for 10-year periods thereafter.

[5] A renewal application is referred to as a "Section 9 filing" and a declaration of use or excusable non-use is referred to as a "Section 8 filing."  These are often filed together in a "Section 8/9 combined filing."

4

On July 20, 2006, the USPTO's Post-Registration Division issued an Office Action refusing to accept Cubaexport's renewal application, based on OFAC's view that the existing specific license to Ropes & Gray did not authorize the USPTO to accept payment of the required fee ("July 2006 Office Action"). The Office Action stated as follows:

> [T]he USPTO was informed that License No. CU-74488 does not authorize Ropes & Gray LLP to pay the renewal fee. <u>Therefore, the required fee for the combined filing has not been paid.</u> It is noted in a letter dated April 7, 2006, Ropes & Gray LLP filed an application for another specific license for authorization of payment of the fees required for renewal of the subject registration. Registrant is required to notify the USPTO whether the specific license has been granted or denied . . . within 6 months from the mailing date of this Office action. . . . If the owner [or OFAC] informs the USPTO that the specific license has been denied, . . . the registration will be deemed cancelled/expired.

R. at A233. A registrant must respond directly to the Post-Registration Division if it disagrees with an initial refusal to accept a trademark renewal application and may file a petition to the Director from a subsequent refusal. See 37 C.F.R. §§ 2.146, 2.186; USPTO, Trademark Manual of Examining Procedure ("TMEP") §§ 1604.18(a), 1606.14(a).

On July 28, 2006, OFAC informed Cubaexport that its application for a specific license was denied. R. at A247. Cubaexport notified the USPTO of the denial on August 1, 2006, id. at A237, which was within the six-month deadline. The USPTO responded by issuing a new Office Action, dated August 3, 2006 ("August 2006 Office Action"), id. at A258, that maintained the USPTO's refusal to accept Cubaexport's renewal application and stated that the registration would be cancelled or deemed expired for failure to submit the required fee. Id. The USPTO refunded Cubaexport's fee the same day. Unlike the July 2006 Office Action, the August 2006 Office Action did not provide for a further response to the Post-Registration Division, but informed Cubaexport of its right to "file a petition to the Director requesting review of this decision . . . within six months from the mailing of this letter." Id.

5

On October 4, 2006, Cubaexport filed a timely petition with the Director seeking to set aside the August 2006 Office Action. Id. at A260. On December 6, 2006, the USPTO suspended the petition pending the outcome of Cubaexport's pending challenge to OFAC's 2006 denial of its request for a specific license. Id. at A410. While the petition was suspended, cancellation of Cubaexport's "HAVANA CLUB" registration was also suspended.

On June 11, 2012, Cubaexport notified the USPTO that the OFAC litigation had concluded and that OFAC's decision to deny Cubaexport's request for a specific license to pay USPTO the fee had been upheld by a district court and affirmed by the court of appeals. Id. at A453.

The record is silent as to any action on the renewal application until 2015, when, in light of the different political climate for U.S.-Cuba relations, Cubaexport applied to OFAC for a new license authorizing all transactions necessary to process the 2006 renewal fee, including the payment that the USPTO had refused to accept in December 2005, as well as the fee that was required for an upcoming 2016 renewal. Id. at A466. On January 11, 2016, OFAC granted the license authorizing Cubaexport to pay the fees due for the 2006 and 2016 renewals. Id. at A466–67. As to the 2006 renewal, the OFAC license specifically authorized transactions "related to Cubaexport's submission filed with the USPTO on or about December 14, 2005, and the payment referenced therein." Id. at A467 § 1. The next day, on January 12, 2016, Cubaexport supplemented its petition to the Director, which was still suspended, with a letter explaining that OFAC had issued a specific license authorizing all transactions necessary to renew and maintain the "HAVANA CLUB" and design trademark registration, including payment of the 2006

renewal fee. <u>Id.</u> at A464. Invoking its supervisory authority under 37 C.F.R. § 2.146(a)(3),[6] the Commissioner for Trademarks, acting on behalf of the USPTO Director, issued a decision granting Cubaexport's petition and accepting its renewal application and fees. <u>Id.</u> at A468. The Director's decision stated that, because the OFAC license specifically authorized the December 14, 2005 payment, "the fee payment is effective as of December 14, 2005, and the combined §8/9 filing is considered complete and acceptable as of that date." <u>Id.</u> at A470. The Director's decision also stated that, even if the OFAC license did not authorize the 2005 payment, any payment deficiency was cured because the August 2006 Office Action stated that its denial decision could be challenged by petitioning the Director; Cubaexport "filed a timely petition;" and Cubaexport "satisfied the fee requirement by . . . providing the [OFAC] license to the USPTO as a timely supplement to its petition, and authorizing the USPTO to charge any uncollected fees to its counsel's USPTO deposit account." <u>Id.</u>

The APA, 5 U.S.C. § 701 <u>et seq.</u>, confines judicial review of executive branch decisions to the administrative record of proceedings before the pertinent agency. 5 U.S.C. § 706; <u>see also</u> <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973). As such, there can be no genuine issue of material fact in an APA action; rather, it is the legal questions presented in the civil action that are ripe for resolution on cross-motions for summary judgment. See <u>Am. Forest Res. Council v. Hall</u>, 533 F. Supp. 2d 84, 89 (D.D.C. 2008) (quoting <u>Occidental Eng'g Co. v. INS</u>, 753 F.2d 766, 769–70 (9th Cir. 1985)) ("[I]t is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine

---

[6] "The Director may exercise supervisory authority on [a] petition in appropriate circumstances. 37 C.F.R. § 2.146(a)(3). The facts here support the invocation of supervisory authority to accept petitioner's combined §8/9 filing." R. at A470.

whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'").

Under the APA, the Court may set aside the USPTO Director's decision to accept Cubaexport's 2006 renewal application only if that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). This standard does not allow the Court "to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).

To renew a trademark registration, a registrant must submit a Section 8 declaration of use or excusable non-use and file a Section 9 written renewal application at any time within 1 year before the end of the 10-year renewal period or within a 6-month grace period thereafter. 15 U.S.C. §§ 1058(a), 1059(a). A complete application, including the required fees, must be submitted within this statutory timeframe. "The Director cannot extend, suspend, or waive this statutory requirement for any reason, [not] even for an extraordinary situation." Soc'y of Tribologists & Lubrication Eng'rs, Ser. No. 75/445,159 (Dir. USPTO Feb. 1, 2023); In re Holland Am. Wafer Co., 737 F.2d 1015, 1018 (Fed. Cir. 1984) (holding that "[t]imeliness set by statute" cannot be waived).

The record shows that Cubaexport timely filed its renewal application by submitting all required forms, including an authorization for the USPTO to charge all fees to Ropes & Gray's USPTO deposit account on December 14, 2005—more than a month before its registration was due for renewal on January 27, 2006. Bacardi argues that Cubaexport's application was untimely because the required fee "was not [made] within the statutory renewal period, nor within the time prescribed after notification of the deficiency." [Dkt. 53] at 20. It claims that the December 2005 payment was untimely because the USPTO refunded the payment in August

8

2006 based on OFAC's determination that the Ropes & Gray license did not authorize the payment. Bacardi further argues that the Director cannot waive this lack of timeliness and therefore disregarded the law when she accepted Cubaexport's 2006 renewal application in 2016.

Bacardi's argument fails because the law provides that OFAC may issue a license authorizing a transfer of funds previously made in violation of the embargo and that such license "shall validate such transfer or render it enforceable to the same extent as it would be valid and enforceable but for the [CACR]. . . ." 31 C.F. R. § 515.203(c). Given this regulation, Cubaexport's December 2005 payment was timely in that it met all conditions for payment by providing authorization for the USPTO to charge all fees to a sufficiently funded deposit account, which would have been effective except for OFAC not having authorized the payment. OFAC's subsequent retroactive authorization in January 2016 effectively validated the payment as having been made as of December 14, 2005, which was within the statutory renewal period. Accordingly, the Director's finding that payment of the fee was timely and the decision to accept Cubaexport's 2006 renewal application was neither arbitrary nor capricious and was in accordance with the Lanham Act and its regulations.

Alternatively, the Director found that even if the OFAC license had not authorized the 2005 payment, any payment deficiency was cured. When Cubaexport timely filed its petition, cancellation of its registration was suspended. See 37 C.F.R. § 2.165 ("The petition must be filed within six months of the date of issuance of the action maintaining the refusal, or the Office will cancel the registration and issue a notice of the cancellation."). While the petition was pending, Cubaexport filed a new application for a specific license to pay the fee, which OFAC ultimately granted, thereby curing the deficiency. See 31 C.F. R. § 501.801(b)(5) ("Denial of a specific license does not preclude the . . . filing of a further application.").

9

Bacardi claims that the Director's decision disregarded the law and was arbitrary and capricious in granting the petition because Cubaexport had not cured the deficiency "within the time prescribed after notification of the deficiency," as required by 15 U.S.C. § 1509(a). Bacardi erroneously argues that Cubaexport was required to cure the deficiency and pay the fee within six months from the date of the July 2006 Office Action, that is, by January 20, 2007. [Dkt. No. 53] at 18.[7] That is not the case. Rather, as the Office Action clearly stated, Cubaexport had six months to respond to the refusal to renew its registration and inform the USPTO whether OFAC had granted or denied its request for a specific license to pay the fee, which it did. Once Cubaexport sought review of the examiner's refusal to renew its registration, there was no prescribed time period for curing the deficiency. Cubaexport was entitled to cure the deficiency while its petition was pending and, as explained below, the Director had supervisory authority to consider the sufficiency of Cubaexport's renewal application.

The Commissioner, on the Director's behalf, may exercise supervisory authority over a petition in appropriate circumstances, even where there has been no clear error or abuse of discretion by an examiner if a petitioner can show that it has substantially complied with the requirements of the statute or rules. 35 U.S.C. §2; 37 C.F.R. § 2.146(a)(3); TMEP § 1707 (2015); Soc'y of Tribologists, Ser. No. 75/445,159 (Dir. USPTO Feb. 1, 2023).

In Society of Tribologists, the Commissioner of Trademarks granted the petition and allowed payment of a Section 8/9 combined filing fee more than two years and eight months

---

[7] Bacardi cites 37 C.F.R. § 2.184(b)(1) as support for its argument. Bacardi misreads this regulation, which specifies the time in which to file a response: "The registrant must file a response to the refusal of renewal within six months of the date of issuance of the Office action, or before the expiration of the registration, whichever is later. If no response is filed within this time period, the registration will expire. . . ." There is no reference in § 2.184(b)(1) to a deadline by which a deficiency must be cured.

10

after the statutory period had expired. In that case, the petitioner filed a Section 7 request for an amendment or correction of a registration certificate and provided a specimen showing its use of the mark. On the Section 7 request form, the petitioner selected a box indicating that it was also filing a Section 8/9 combined filing. Because petitioner mistakenly believed that checking the box on the form was sufficient to satisfy the combined filing requirements, it did not submit any additional documents or fees before the statutory deadline, and the USPTO cancelled the registration. The Commissioner initially dismissed the petition for review, finding it had no authority to waive a statutory requirement. In response, the petitioner filed a request for reconsideration based on its substantial compliance—that is, it had checked the combined filing box and filed a declaration of use in support of its Section 7 request, which also satisfied Section 8's requirement. The Commissioner granted the request for reconsideration and granted the petition after finding that because the petitioner timely filed what it thought was a complete Section 8/9 combined filing, its application was timely filed but deficient and that the deficiencies could be cured after the statutory deadline. "[W]hen a combined filing is filed within the statutory filing period but contains deficiencies, those deficiencies may be corrected after the statutory time period, with the payment of a deficiency surcharge." Soc'y of Tribologists (citing 15 U.S.C. §§1058(c), 1059(a); 37 C.F.R. §2.164, 2.185; TMEP §§1604.17 and 1606.13). The Commissioner directed that the registration be reinstated and forwarded to the Post-Registration Division to identify additional requirements necessary for a complete combined filing.

  Here, just as in the Tribologists matter, Cubaexport had substantially complied with the renewal application requirements because the Section 8/9 combined filing, along with the filing fee, was submitted to the USPTO within the statutory deadline. The USPTO kept the filing fee

11

for several months until a subsequent determination that it could not accept the fee because Cubaexport did not have a specific license to pay the fee, thereby causing a deficiency. That deficiency was cured when the renewal and deficiency surcharge were paid. Accordingly, the Director's alternative reason for accepting Cubaexport's 2006 renewal application was also neither arbitrary nor capricious and was in accordance with the Lanham Act and its regulations.

For the reasons stated in open court, as further explained in this Order, plaintiff's Motion for Summary Judgment has been DENIED and defendants' Motion for Summary Judgment and intervenor-defendant's Motion for Summary Judgment have been GRANTED. Therefore, the January 13, 2016 decision of the USPTO Director will be AFFIRMED by an Order to issue with this Memorandum Opinion.

Entered this 4th day of March, 2025.

Alexandria, Virginia

/s/ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Leonie M. Brinkema
United States District Judge